UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KURT PETERSEN, #34595-045                                                          PETITIONER

V.                                                           CIVIL ACTION NO. 3:25-CV-21-DPJ-ASH

WARDEN B. WINGFIELD                                                              RESPONDENT

ORDER

Petitioner Kurt Petersen brings this habeas petition under 28 U.S.C. § 2241 challenging the Bureau of Prisons' (BOP) calculation of time credits. Am. Pet. [3] at 2. On November 17, 2025, United States Magistrate Judge Andrew S. Harris entered a Report and Recommendation [19]. Judge Harris recommends dismissing Petersen's petition for failure to exhaust and denying his Motion for Finding in Favor of Petitioner [7]. Although Petersen filed objections [20] to the R&R, the Court finds that it should be adopted.

I.    Facts and Procedural History

Petersen is serving a 72-month sentence following his conviction for conspiracy to distribute marijuana and conspiracy to commit money laundering in the United States District Court for the Western District of Missouri. *See* Mem. [3-1] at 1. Petersen is serving his sentence at the Federal Correctional Complex in Yazoo City, Mississippi.

Petersen filed his first petition on January 13, 2025. *See* Pet. [1]. The next day, Judge Harris entered an order directing Petersen to return an attached form before February 11, 2025, to properly file his habeas petition under § 2241. *See* Order [2] at 1. On January 31, 2025, Petersen returned the form and included his first petition [1] as an attached memorandum [3-1].

Petersen's petition alleges that because of credit earned under the First Step Act (FSA) and the Second Chance Act (SCA), he should have been released to a residential reentry center, halfway house, or home confinement on February 3, 2025. *See* Mem. [3-1] at 2. Petersen is

enrolled in the Residential Reentry Drug Abuse Program (RDAP) and upon completion, he will be eligible for early release. *Id.*; *see* Resp't's Resp. [14] at 1 (confirming Petersen is eligible for early release via RDAP). Because he would not complete RDAP by February 3, 2025, Petersen asks the Court to issue an order placing him in some form of community confinement following completing RDAP. *See* Mem. [3-1] at 2.

On April 21, 2025, believing Respondent's response was overdue, Petersen filed a motion for a finding in his favor [7]. On May 15, 2025, Judge Harris entered an order [8] directing Respondent to show cause why the Court should not sanction him or consider the petition without an answer. *See* Order [8] at 1. But in a May 23, 2025 order, Judge Harris clarified that the earlier order [8] was premature, because the United States Attorney had not yet received a copy of Petersen's petition. *See* Order [12] at 1. Respondent then responded to the petition on June 16, 2025. Resp't's Resp. [14].

Judge Harris entered the R&R [19] on November 17, 2025, concluding that Peterson failed to exhaust his administrative remedies. Petersen timely filed objections [20]; Respondent did not file a response.

II.  Standard

Title 28 U.S.C. § 636(b)(1) governs R&Rs. It requires the Court to "make a de novo determination of those portions of the [R&R] or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). Also, because Petersen is proceeding pro se, the Court will liberally construe his petition and filings. *See Collins v. Dall. Leadership Found.*, 77 F. 4th 327, 330 (5th Cir. 2023).

III.    Analysis

Petersen objects to the R&R for three reasons.  He says the R&R "misrepresents the nature of the petition, incorrectly concludes that Petitioner failed to exhaust administrative remedies, and addresses a claim that Petitioner did not make while failing to address the claim he actually raised."  Obj. [20] at 1.  The Court will address each of these objections in turn.

A.    Misinterpretation

First, Petersen says the R&R "evaluates the petition as if [he] argued that he should have already been released from [BOP] custody or that his supervised release date should be February 2025."  *Id.*  Rather, Petersen says his petition challenged the BOP's "calculation and application of earned time credits under the First Step Act and the resulting date for [his] eligibility for prerelease custody."  *Id.* at 2.  Specifically, he argues that "he should be eligible for prerelease custody approximately five and a half months earlier than currently calculated."  *Id.*  In sum, he is not asking for earlier supervised released, but rather, earlier placement in prelease custody.

A request to be moved to prerelease custody is a challenge to "<u>where</u> [an inmate] should serve his sentence, not whether or how long he should serve."  *Quintero-Diarte v. Warden, Yazoo City Low*, No. 3:25CV93-TSL-MTP, 2025 WL 1343037, at *1 (S.D. Miss. May 8, 2025) (emphasis in original).  This is an important distinction because while a habeas petition is the "proper vehicle to seek release from custody," a civil-rights lawsuit should be used "to attack unconstitutional conditions of confinement and prison procedures."  *Blackwell v. Warden, FCI Yazoo*, No. 3:24-CV-832-KHJ-MTP, 2025 WL 1370821, at *1 (S.D. Miss. May 12, 2025) (quoting *Maxwell v. Thomas*, 133 F.4th 453, 454 (5th Cir. 2025) (per curiam) (cleaned up)).  Thus, the Fifth Circuit applies a "bright-line rule" for deciding whether § 2241 applies:  "[I]f a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit."  *Melot v. Bergami*, 970 F.3d

3

596, 599 (5th Cir. 2020). The Fifth Circuit applied this test in *Maxwell*, when the petition sought "transfer to a halfway house or home confinement"—two forms of prerelease custody. 133 F.4th at 454.

Here, Petersen repeatedly states he "is not seeking early supervised release." Obj. [20] at 3. Thus, to the extent Petersen seeks earlier placement in prerelease custody, the relief he seeks would not entitle him to accelerated release. Because of this, under the Fifth Circuit's bright-line rule, "§ 2241 is not the proper vehicle" for Petersen's claim. *Maxwell*, 133 F.4th at 454. Though not the focus of the R&R, Judge Harris made this same point. *See* R&R [19] at 5 n.4 ("[A] claim that Petersen should be placed in prerelease custody sooner than currently projected 'is not cognizable under § 2241.'" *Lawrence v. Warden of Seagoville*, No. 3:24-CV-2731, 2025 WL 1240765, at *2 (N.D. Tex. Apr. 4, 2025)). The Court finds this objection unavailing.[1]

B.   Exhaustion

Next, Petersen objects to the R&R's conclusion that he failed to exhaust his administrative remedies. Obj. [20] at 3. In an attached declaration [20-1], Petersen claims he "submitted all levels of the [BOP] Administrative Remedy Program" and "considered the non-response to be a denial." Petersen Decl. [20-1] at 1. In the alternative, Petersen claims "exhaustion should be excused." Obj. [20] at 3.

***Did Petersen Exhaust:***  It is well established that before filing a § 2241 petition, "[a] federal prisoner seeking credit on his sentence . . . 'must first exhaust his administrative remedies through the Bureau of Prisons.'" *Castano v. Everhart*, 235 F. App'x 206, 207 (5th Cir. 2007) (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990)). The BOP's multi-step

---

[1] Because Petersen sought relief under § 2241 and a civil-rights suit could face other challenges, the Court will not construe his § 2241 petition as something else. That said, this ruling is without prejudice to a civil-rights suit.

Administrative Remedy Program "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. The final step is appeal to the General Counsel. *See id.* § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."). "Upon completing this multi-tiered review process, a federal inmate h[a]s exhausted h[is] administrative remedies for filing a § 2241 petition." *Gayton v. Rivers*, No. 3:23-CV-1842-X, 2023 WL 8007387, at *2 (N.D. Tex. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 8005316 (Nov. 17, 2023).

Petersen's exhaustion position is inconsistent. In his amended petition, when asked if he "appeal[ed] the decision, file[ed] a grievance or [sought] an administrative remedy," Petersen answered, "No." Am. Pet. [3] at 2. Yet in his objections [20] and declaration [20-1], he claims to have filed all the necessary administrative remedies. *See* Obj. [20] at 3; Petersen Decl. [20-1] at 1. Notwithstanding these inconsistencies, BOP records indicate that Petersen did not properly exhaust. After reviewing all remedies submitted by Petersen, a BOP attorney found that Petersen "has filed a total of three administrative remedies requests concerning his allegations related to his immediate release to community confinement following his completion of [RDAP]" and these remedies "relate to the issues raised in his petition." FiggsGanter Decl. [14-1] at 3. But "none of these remedies appropriately completed the exhaustion process" because "there is no indication the Petitioner ever" submitted the required remedy to the Office of the General Counsel. *Id.*

Based on this record, the Court finds Judge Harris properly concluded that Petersen did not exhaust. *See* R&R [19] at 3 (finding "BOP's records confirm that he did not" exhaust the administrative remedy process).

5

***Should Exhaustion be Excused:***  In the alternative, Petersen argues that exhaustion would be futile.  Based on his asserted conditional release date of February 3, 2025, Petersen claims "the time to fully exhaust is greater than the time remaining in prison."  Mem. [3-1] at 5–6.  He makes a different argument in his objections, saying that the "administrative process became unavailable when the Bureau failed to act" on one of his corrected remedies, and because "further delay would defeat the purpose of the First Step Act's earned credit time system."  Obj. [20] at 3.

"Exceptions to the exhaustion requirement are appropriate where the available remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action."  *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).  These exceptions apply only in "extraordinary circumstances" and the Petitioner bears the burden of showing the futility of administrative review.  *Castano*, 235 F. App'x at 207.

Petersen's futility argument centers on his position that the time to exhaust is greater than the time he should remain in prison.  *See* Mem. [3-1] at 5–6.  Judge Harris concluded that this claim is both incorrect and unavailing.  *See* R&R [19] at 4–5.  First, Petersen's projected release date of May 31, 2028, already includes the 105 days he has currently earned under the FSA.  *See* Inmate Data [14-1] at 7; Landers Decl. [14-2] at 2 (confirming Petersen is FSA eligible and has been credited 105 days).  And while he may earn up to 365 days toward early supervised release under the FSA, these credits cannot be applied prospectively.  *See* 18 U.S.C. § 3632(d)(4)(A); Landers Decl. [14-2] at 2–3.  Thus, the Court finds no error with the calculation of Petersen's credits under the FSA.

The status of any reduction under RDAP is less clear.  Relying on Respondent's response to Petersen's petition, Judge Harris concluded that the anticipated year off Petersen's sentence for completion of RDAP "has already been incorporated into his May 31, 2028 projected release date."  R&R [19] at 4 (citing Resp't's Resp. [14] at 1).  Yet in a declaration attached to this response [14], a BOP staffer states that while Petersen is enrolled in RDAP, "he has not completed the program warranting the application of any additional reduction in his sentence."  Landers Decl. [14-2] at 2; *see also* 18 U.S.C. § 3621(e)(2)(B) (stating a prisoner's sentence may be reduced "*after* successfully completing a treatment program" (emphasis added)).  But even if Petersen's participation in RDAP hasn't been credited to his sentence, applying this credit would only move his projected release day to May 31, 2027—more than a year from now.  *See* Inmate Data [14-1] at 7.

In sum, neither Petersen's FSA nor RDAP argument show that the time to exhaust is greater than the time he must remain in prison.  And even if it were, Judge Harris correctly noted that this would not be an extraordinary circumstance.  *See* R&R [19] at 4; *see also Goss v. Longley*, No. 3:13-CV-825-DCB-MTP, 2014 WL 4658970, at *2 (S.D. Miss. Sept. 17, 2014) (holding "[t]he possibility of [petitioner's] sentence expiring while the administrative remedy process is pending falls short of the 'extraordinary circumstances' required").

Next, Petersen says exhaustion should be excused because the "administrative process became unavailable when the Bureau failed to act" on one of his corrected remedies.  Obj. [20] at 3.  This is incorrect.  28 C.F.R. § 542.18 provides that if an "inmate does not receive a response . . . the inmate may consider the absence of a response to be a denial at that level."  *See also Flores v. Lappin*, 580 F. App'x 248, 250 (5th Cir. 2014) ("[E]ven if a response to [the inmate's] administrative remedy request was delayed, the regulations of the Bureau of Prisons

7

provide authority for inmates who do not receive timely responses to administrative remedy submissions to pursue their appeals.") And Petersen is aware of this provision because he cites it in his objections. *See* Obj. [20] at 3. After the BOP did not respond to his corrected remedy, Petersen should have submitted this remedy to the General Counsel as required. *See* 28 C.F.R. § 542.15(a). Yet Petersen has not done this and does not argue anything prevents him from doing so.

Petersen's final argument, that "further delay would defeat the purpose of the First Step Act's earned credit time system" is also unpersuasive. Obj. [20] at 3. Again, Petersen's projected release date already includes the 105 days he has earned under the FSA. *See* Inmate Data [14-1] at 7; Landers Decl. [14-2] at 2. This is not an "extraordinary circumstance." *Castano*, 235 F. App'x at 207.

Thus, Petersen both failed to exhaust his administrative remedies, and he has not shown that exhaustion should be excused. The Court finds Judge Harris's reasoning and recommendation are correct.

3.    Addressing the Wrong Claim

Petersen's final objection to the R&R is that it "addresses a claim that [he] did not make while failing to address the claim he actually raised."[2] Obj. [20] at 1. Petersen claims that on September 4, 2024, the BOP added a "Conditional Placement" date to inmates' FSA worksheets

---

[2] Liberally construing Petersen's objections, he seems to argue the R&R addresses a claim he did not make because, in his view, the R&R "analyzes only the supervised release provisions, which are irrelevant to Petitioner's actual claim." Obj. [20] at 3. He claims the R&R construed his request as seeking earlier supervised release, when what he requests is earlier placement in prerelease custody. *See id.* at 2–3. But as already stated, if Petersen seeks earlier placement in prerelease custody, which would not accelerate his release from BOP custody, he cannot do so under § 2241. *See Maxwell*, 133 F.4th at 454.

8

and that his "conditional release date" was February 3, 2025.  Mem. [3-1] at 4.  He says the R&R failed to address his claims about the "conditional placement system."  Obj. [20] at 4.

Respondent says "February 3, 2023, is not listed as a possible or conditional release date" anywhere in Petersen's sentence computation information.  Resp't's Resp. [14] at 2 n.1.  This is correct.  In fact, the only reference to this date in the BOP's sentence computation information lists "02-03-2025" as the date when Petersen's computation data "was last updated" in the BOP system.  Inmate Data [14-1] at 7.  The same document clearly states that Petersen's "projected satisfaction date" is May 31, 2028.  *Id.*  And though Petersen argues the February 3rd date related to a "conditional placement system," he provides no argument or documentation showing that he was ever given a conditional placement date of February 3, 2025.  Judge Harris considered this claim and found "Petersen has not shown that he was due to be released on February 3, 2025."  R&R [19] at 5.  The Court agrees.

IV.    Conclusion

The Court has considered all arguments.  Those not specifically addressed would not have changed the outcome.  The Report and Recommendation [19] of United States Magistrate Judge Andrew S. Harris is adopted as the finding and holding of the Court.  Consistent with the Report and Recommendation, Petersen's petition [3] is dismissed without prejudice.  Petersen's motion [7] is denied.  A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 9th day of January, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE